IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JORDAN LEVI MARTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 23-cv-381-RAW-DES ) |
| LELAND DUDEK,[1] Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff Jordan Levi Martin ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons set forth below, the undersigned Magistrate Judge recommends that the Commissioner's decision denying benefits be AFFIRMED.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but

---

[1] Effective February 17, 2025, Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).  No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On June 2, 2020, Claimant protectively applied for supplemental security income benefits under Title XVI of the Act. (R. 17, 209-17). Claimant alleges he has been unable to work since an amended onset date of June 2, 2020, due to social anxiety disorder, a learning disability, Asperger's syndrome, panic disorder, depression, insomnia, scoliosis, and mood swings. (R. 37, 234). Claimant was 32 years old on the date of the ALJ's decision. (R. 26, 209). He has a high school education and no past relevant work. (R. 39, 52).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 92-104, 108-18, 132). ALJ Doug Gabbard, II conducted an administrative hearing and issued a decision on April 17, 2023, finding Claimant not disabled. (R. 17-26, 32-57). The Appeals Council denied review on September 8, 2023 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on November 9, 2023. (Docket No. 2).

## III.     The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since his application date of June 2, 2020. (R. 19). At step two, the ALJ found Claimant had severe impairments of anxiety, obsessive-compulsive disorder, depressive disorder, bipolar disorder, and trauma stressor disorder. (*Id.*). The ALJ further found Claimant had the non-severe impairments of degenerative disc disease, scoliosis, nicotine addiction, hypertension,

3

Asperger's syndrome, insomnia, substance abuse disorder, and migraines. (*Id*.). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-21).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> a full range of simple, repetitive and routine work where his supervision is tactful, supportive, and non-confrontational; he is capable of frequent contact with supervisors and coworkers; he cannot perform fast-paced work, i.e., work requiring a specific production rate such as assembly-line work or work requiring hourly quota; he should have only occasional, gradually implemented workplace changes; he can set ordinary daily work goals, but may need assistance with long term or complex planning; and he should have no public contact.

(R. 21). The ALJ provided a summary of the evidence that went into this finding. (R. 20-25).

At step four, the ALJ concluded that Claimant had no past relevant work to analyze, so he proceeded to step five. (R. 25). There, based on the testimony of a VE, the ALJ concluded that Claimant could perform occupations existing in significant numbers in the national economy, including floor waxer, bundle clerk, and cleaner. (R. 25-26). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

## IV.    Issues Presented

Claimant asserts the ALJ erred by: (1) failing to account for his non-severe spinal impairments in the RFC (Docket No. 14 at 10-11); and (2) failing to resolve a conflict between the VE's testimony and the description in the Dictionary of Occupational Titles ("DOT") for the cleaner job as it relates to Claimant's public interaction limitation (Docket No. 14 at 12).[2] The undersigned Magistrate Judge finds no reversible error in the ALJ's decision.

---

[2] The undersigned Magistrate Judge has re-organized Claimant's arguments for clarity.

V.    Analysis

    A.    **ALJ Properly Considered Claimant's Non-Severe Spinal Impairments**

A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013); *see also* 20 C.F.R. § 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are 'not severe' . . . when we assess [a claimant's] residual functional capacity."). Additionally, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's wok-related limitations. SSR 96-8p at *7. The ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

In his written decision, the ALJ thoroughly discussed Claimant's hearing testimony and function reports, as well as the findings of his treating, consultative, and reviewing physicians regarding Claimant's degenerative disc disease and scoliosis in the RFC discussion. (R. 21-25). Specifically, the ALJ noted Claimant alleged, *inter alia*, limitations with respect to lifting, squatting, bending, standing, reaching, walking, and stair climbing. (R. 22). As to Dr. Alexandra Worthy's consultative examination, the ALJ noted her diagnosis of scoliosis, as well as her examination finding that that Claimant's musculoskeletal range of motion was normal except for some mild reductions in cervical and lumbar rotation. (R. 24). The ALJ then found Dr. Worthy's opinion that that Claimant had no exertional, postural, or manipulative limitations "mostly

5

persuasive." (*Id.*). As support for this finding, the ALJ found Dr. Worthy's opinion was consistent with the medical evidence of record, which showed Claimant's physical examinations were mostly within normal limits and that his degenerative disc disease was "mild." (*Id.*). The ALJ also found persuasive, the state agency physicians' opinion that Claimant's physical impairments were non-severe, again noting Claimant's mild degenerative disc disease and physical examinations that were "overall within normal limits." (*Id.*). Thereafter, the ALJ omitted any physically-based limitations from the RFC. (R. 21). Although the ALJ could have been more thorough in his RFC assessment by specifically stating Claimant's physical impairments did not result in any work-related limitations, the Court finds the ALJ's discussion of the evidence sufficient for the Court to follow his reasoning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on technical perfection."). Notably, Claimant fails to point to any evidence other than his own assertions to support the additional exertional and postural limitations he claims, and Claimant does not challenge the ALJ's findings regarding Claimant's subjective symptoms. Because the ALJ thoroughly considered Plaintiff's medical records, the medical source opinion evidence, and Plaintiff's testimony in reaching the RFC determination, his decision is supported by substantial evidence.

      **B.**    **Any Error Regarding the Cleaner Job is Harmless**

Claimant next contends there is a conflict between his RFC limitation of "no public contact" and the DOT description for the cleaner job, which includes "render[ing] personal assistance to patrons" among the tasks performed in this occupation. DOT § 323.687-014. However, even assuming *arguendo* that Claimant is precluded from performing the cleaner job,

any such error is harmless. Because the ALJ properly omitted postural and exertional limitations from the RFC as explained above, there is no conflict between Claimant's RFC and the physical requirements of the floor waxer and bundle clerk jobs, and the VE testified that there are "109,300" floor waxer and "72,100" bundle clerk jobs in the national economy. (R. 53). Thus, between the two remaining jobs that do not pose a conflict, there are more than 180,000 jobs available nationally. While there is no bright-line rule as to how many jobs are sufficient to be significant as a matter of law, "the number appears to be somewhere between 100 . . . and 152,000." *Evans v. Colvin,* 640 F. App'x 731, 736-37 (10th Cir. 2016). The undersigned Magistrate Judge is satisfied that the 180,000 nationally-available floor waxer and bundle clerk jobs are sufficient to support the ALJ's step-five finding that there were jobs existing in significant numbers that Claimant could perform consistent with his RFC. Therefore, any error the ALJ may have made with respect to the cleaner job is harmless and does not warrant reversal or remand. Accordingly, the ALJ's decision should be affirmed.

## VI. Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that ALJ applied the correct legal standards and that the Commissioner's decision is supported by substantial evidence. Accordingly, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision finding Claimant not disabled be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 11th day of March, 2025.

_____
D. Edward Snow
United States Magistrate Judge